IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-mc-00212-WJM-KLM

LUV N' CARE, LTD.,

   Plaintiff,

v.

WILLIAMS INTELLECTUAL PROPERTY,

   Respondent.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Motion to Compel Williams Intellectual Property's Compliance with Subpoena and for Expedited Briefing** [#1][1] (the "Motion"). Respondent Williams Intellectual Property ("WIP") timely filed a Response [#12] in opposition to the Motion [#1]. The Court held a hearing on the Motion [#1] on December 7, 2018. *See Minutes* [#13]. The Court has reviewed the Motion [#1], the Response [#12], the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#1] is **GRANTED in part** and **DENIED in part**.

**I. Background**

Plaintiff Luv N' Care, Ltd. ("LNC") filed this Motion [#1] on November 13, 2018,

_____

   [1] "[#1]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

-1-

pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i). *Motion* [#1] at 1. The underlying proceeding in this case is a patent dispute in the United States District Court for the Western District of Louisiana between Plaintiff LNC and Defendants Lindsey Laurain ("Laurain") and her company, Eazy-PZ, LLC ("Eazy-PZ"). *Id.* Ms. Laurain retained Ben Williams of WIP, a registered patent agent, to prosecute the two patents at issue in the underlying litigation. *Id.* at 3. Here, LNC seeks an order compelling WIP, a nonparty to this suit, to produce certain documents and a privilege log responsive to a subpoena issued in the underlying litigation. *Id.* at 1. On October 25, 2018, WIP produced what it described as a log "employing a 'categorical approach'" to its assertions of privilege. *Response* [#12] at 2. On December 7, 2018, the morning of a hearing on the present Motion, WIP produced an amended privilege log to counsel for LNC. *Hr'g Tr.* [# 22] at 14. At the hearing, the Court ordered WIP to once again amend its privilege log to identify the documents listed on the privilege log by the categories sought in LNC's subpoena. *Id.* at 31. It is this third privilege log that is in dispute in the current matter. *See Ex. 2 to Response* [#20-2]. LNC argues that the communications it seeks from WIP are not subject to the patent-agent privilege because Eazy-PZ was not a client of WIP at the time and did not become a client until Ms. Laurain officially assigned her intellectual property rights to Eazy-PZ on October 9, 2016. *Id.* at 3. WIP contends that WIP was de facto retained by Eazy-PZ when Ms. Laurain founded Eazy-PZ on April 10, 2014, because WIP was paid by Eazy-PZ and not Ms. Laurain. *Response* [#12] at 4. WIP also avers that regardless of whether Eazy-PZ was an official client of WIP, the common interest doctrine applies because Ms. Laurain and Eazy-PZ had a "common interest in the patent prosecution and resulting patent rights," precluding waiver of the patent-agent privilege.

*Id.* at 5.

LNC further argues that "all privilege assertions with respect to the Williams IP documents should be waived" due to the inadequacy of its privilege log even after its third revision attempt. *Response* [#20] at 6. LNC emphasizes that "[h]undreds of the documents have no information regarding who authored the document or who received it," arguing that an assertion of privilege with respect to such documents cannot stand because LNC "does not know what is being withheld or why it is being withheld." *Id.*

Because the Court holds that WIP has failed to satisfy its burden of establishing that the patent-agent privilege applies, even assuming its recognition in the Tenth Circuit Court of Appeals, the Court does not address the issues of whether Eazy-PZ was a client of WIP at the relevant time or of whether the common interest doctrine applies.

## II. Analysis

The Court first examines the scope of the attorney-client privilege as applied in the Tenth Circuit. The Court next addresses the question of whether the patent-agent privilege applies in the Tenth Circuit. Finally, the Court applies its analysis to WIP's privilege log and categorically determines which entries are protected from disclosure under the asserted privileges.

### A.     Attorney-Client Privilege

Federal Rule of Civil Procedure 26(b)(1) requires production of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Because there is no argument that the requested documents are not relevant, the question for the Court is whether Plaintiff seeks privileged information. Federal courts "narrowly construe all privileges." *Everitt v. Brezzel*, 750 F. Supp. 1063, 1066 (D. Colo.

1990). The party asserting attorney-client privilege as a bar to discovery has the burden of establishing that the privilege applies. *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); Fed. R. Civ. P. 26(b)(5).

The parameters of the attorney-client privilege are well-established. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (noting that the attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law"). The "mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege," *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995); rather, "[t]he attorney-client privilege protects communications between a client and an attorney, made in order to obtain or deliver legal assistance, that were intended by the participants to be confidential." *Bethel v. U.S. ex rel Veterans Admin. Med. Ctr.*, No. 05-cv-01336-PSF-KLM, 2008 WL 45382, at *7 (D. Colo. Jan. 2, 2008) (citing *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 624 (D. Colo. 1998)).

It is well-settled that when privileged communications are voluntarily disclosed to a third party, the privilege is waived: "the privilege must be jealously guarded by the holder of the privilege lest it be waived. The courts will grant no greater protection to those who assert the privilege than their own precautions warrant." *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989). "Only confidential information is protected by the privilege; if the information has been or is later shared with third parties, the privilege does not apply." *Wildearth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243, 1265 (D. Colo. 2010). The party asserting the privilege bears the burden of establishing non-waiver. *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-cv-02868-MSK-KMT, 2014 WL 3732943, at *5 (D. Colo. July 29, 2014).

Further, "[j]ust because an email is copied to in-house counsel does not render the document subject to privilege." *Pandeosingh v. Am. Med. Response, Inc.*, No. 14-cv-01792-PAB-KMT, 2014 WL 5488415, at *2. (D. Colo. Oct. 30, 2014). In order to be covered by the attorney-client privilege, a communication between a lawyer and a client must relate to legal advice or strategy sought by the client. *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998). For example, the Court previously determined that a party asserting attorney-client privilege over an email exchange failed to carry its burden of establishing that the privilege applied where the party's counsel was a carbon-copy recipient of every email in the exchange. *Pownell v. Credo Petroleum Corp.*, No. 09-cv-1540-WYD-KLM, 2011 WL 1045418, at *3-4 (D. Colo. Mar. 17, 2011). Because the party did not show that the emails were "'made for the *express* purpose of securing legal' advice," the assertion of privilege failed. *Id.* (citing *AAMCO Transmissions, Inc. v. Marino*, Nos. 88-5522, 88-6197, 1991 WL 193502, at *3 (E.D. Pa. Sept. 23, 1991)).

**B.     Patent-Agent Privilege**

The question of whether a patent-agent privilege exists is one of first impression in the Tenth Circuit. The privilege was first formally recognized by the Federal Circuit in *In re Queen's University at Kingston*, 820 F.3d 1287 (Fed. Cir. 2016); since *Queen's University*, every federal court that has been faced with the question of recognition of the patent-agent privilege has agreed with the Federal Circuit's determination. *See, e.g.*, *Onyx Therapeutics, Inc. v. Cipla Ltd.*, No. 16-988-LPS, 2019 WL 668846 (D. Del. Feb. 15, 2019); *LL's Magnetic Clay, Inc. v. Safer Med. of Mont., Inc.*, No. A-17-CV-649-SS, 2018 WL 5733178 (W.D. Tex. Aug. 2, 2018); *Lund v. City of Rockford*, No. 17 CV 50035, 2017 WL 5891186 (N.D. Ill. Nov. 29, 2017); *TCL Commc'ns Tech. Holdings Ltd. v.*

*Telefonaktenbologet LM Ericsson*, No. SACV 14-00341 JVS (ANx), 2016 WL 6921124 (C.D. Cal. May 3, 2016); *but see In re Andrew Silver*, 500 S.W.3d 644, 646 (Tex. App. 2016) (declining to create independent patent-agent privilege, concluding that the Texas Constitution prohibited recognition of new privileges).

The patent-agent privilege recognized in *Queen's University* is rooted in the Supreme Court's ruling in *Sperry v. State of Florida ex rel. Florida Bar*, 373 U.S. 379, 383 (1963), which found that "the preparation and prosecution of patent applications for others constitutes the practice of law," even when conducted by non-attorney patent agents. Thus, in *Queen's University*, the Federal Circuit determined that the justification for the traditional attorney-client privilege based on the need for candor between an attorney and his or her client applied equally to patent agents and their clients. 820 F.3d at 1296.

However, the scope of the patent-agent privilege is narrow relative to the more broadly-applied attorney-client privilege. *Queen's University* recognized a privilege that is "coextensive" with the rights of patent agents to practice law before the U.S. Patent and Trademark Office ("USPTO"). *Id.* at 1298. Regulations promulgated by the USPTO define the scope of those rights. In relevant part, 37 C.F.R. § 11.5(b)(1) provides:

> Practice before the Office in patent matters includes, but is not limited to, preparing and prosecuting any patent application, consulting with or giving advice to a client in contemplation of filing a patent application or other document with the Office, drafting the specification or claims of a patent application; drafting an amendment or reply to a communication from the Office that may require written argument to establish the patentability of a claimed invention; drafting a reply to a communication from the Office regarding a patent application; and drafting a communication for a public use, interference, reexamination proceeding, petition, appeal to or any other proceeding before the Patent Trial and Appeal Board, or other proceeding. Registration to practice before the Office in patent cases sanctions the performance of those services which are reasonably necessary and incident to the preparation and prosecution of patent applications or other proceeding

> before the Office involving a patent application or patent in which the practitioner is authorized to participate.

Thus, the benefit of the patent-agent privilege is limited to those communications between a non-attorney patent agent and his or her client which are in furtherance of the execution of these functions. It follows that communications which are *not* "reasonably necessary and incident to the preparation and prosecution" of patent proceedings before the USPTO are not protected by the patent-agent privilege. For example, "communications with a patent agent who is offering an opinion on the validity of another party's patent in contemplation of litigation or for the sale or purchase of a patent, or on infringement, are not 'reasonably necessary and incident to the preparation and prosecution of patent applications,'" and thus are not protected by the privilege. *Queen's University*, 820 F.3d at 1301-02.

In *Onyx Therapeutics, Inc. v. Cipla Ltd.*, the United States District Court for the District of Delaware recognized the patent-agent privilege set forth in *Queen's University* but declined to extend it to communications from a group of scientists to a patent agent soliciting guidance in "understanding the patent landscape in order to direct their efforts" in pursuing patent prosecution in the future. The court there determined that such communications were "not 'reasonably necessary and incident to' the ultimate patent prosecution" and were thus not protected under the patent-agent privilege, even though such communications would be within the scope of the attorney-client privilege. 2019 WL 668846, at *2. In *TCL Communications Technology Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, the United States District Court for the Central District of California agreed that "the scope of the patent-agent privilege is necessarily narrower than the scope of the

attorney-client privilege." 2016 WL 6921124, at *3. However, it also recognized that the difference between an attorney and a non-attorney patent agent does not justify "lowering the bar on what [a party] must show to carry its burden of demonstrating that the communications at issue are privileged." *Id*. Thus, the party asserting patent-agent privilege bears the burden of showing specifically that the communications in dispute are "reasonably necessary and incident to the preparation and prosecution of patent applications or other proceeding" before the USPTO.

The Court is aware of no authority which expressly bars recognition of the patent-agent privilege within the Tenth Circuit; therefore, for the sole purpose of adjudicating this Motion [#1], the Court assumes, without deciding, that the patent-agent privilege applies in the Tenth Circuit.

**C.    WIP's Privilege Log**

General parameters regarding the content of a privilege log are set forth in Fed. R. Civ. P. 26(b)(5), which requires that a party claiming privilege "expressly make the claim" and "describe the nature of the documents . . . not produced or disclosed–and do so in a manner that . . . will enable other parties to assess the claim." The rule has been interpreted to require the following categories of information for a satisfactory privilege log:

> (1) identification of the author or origin of the document;
> (2) a description of any documents or materials attached to the document;
> (3) identification of all recipients of the document, including addresses and persons or entities  receiving copies;
> (4) the date of the origin of the document; and
> (5) a description of the contents of the document in sufficient detail as to reveal why it is subject to the asserted privilege.

*Wildearth Guardians*, 713 F. Supp. 2d at 1266. The Court emphasizes that the privilege log at issue in this dispute is WIP's third attempt to remedy previously-inadequate logs.

At the December 7, 2018 discovery hearing, the Court ordered WIP to amend its privilege log by identifying the documents on the privilege log by the categories sought in LNC's subpoena. *Hr'g Tr.* [#22] at 30. It appears that WIP has made some effort to comply with that order by using color-coding to identify some entries by the categories sought, but the privilege log remains grossly inadequate. For 259 of the 1,019 entries, no information is provided regarding who authored the document or who received it; those entries state only a bare assertion of privilege under "Patent agent/attorney work product." *See Ex. 2 to Response* [#20-2] at 28-34. Further, 24 names appear on the privilege log which appear nowhere else in the record. For example, entry # 7 appears to be an email from Ms. Laurain to Ben Williams, Jordan Bolton, Timothy McCarthy, and Stuart Schwartz. WIP's Response [#12] to the Motion [#1] indicates that Ben Williams was a patent agent hired by Ms. Laurain, and Jordan Bolton and Timothy McCarthy were attorneys for Eazy-PZ. *Response* [#12] at 5, 12. However, there is no mention of Stuart Schwartz in WIP's briefing or anywhere else in the record. Thus, the Court is wholly unable to determine whether the communications shared with Stuart Schwartz or any of the other unidentified parties are subject to any asserted privileges. To the extent of the Court's knowledge, those unidentified persons are not attorneys or patent agents or their clients, and communications including any of those persons are therefore construed as voluntary disclosure to a third party, thus waiving any privilege that might have applied.

Additionally, every entry purporting to assert the patent-agent privilege fails to meet the burden of showing that the privilege applies, as set out in *Queen's University*. For example, every communication involving Ben Williams, Ms. Laurain's patent agent, asserts that the entry is subject to the patent-agent privilege because of its subject matter:

"Communications re: advice of patent agent and/or advice of patent agent + advice of counsel." *Id.* However, merely soliciting advice of a patent agent does not satisfy the burden of showing that the privilege applies. Per *Queen's University*, the party asserting the privilege bears the burden of showing that the communications are "reasonably necessary and incident to the preparation and prosecution of patent applications or other proceeding before the [USPTO]." 820 F.3d at 1301. WIP's privilege log bears no mention of the preparation or prosecution of patent applications, and WIP has thus failed to satisfy the burden required by its assertion of privilege.

The Court has sorted the 1,019 entries on WIP's privilege log into four categories based on whether the specified documents are protected by any privilege and the reasons why the assertion of privilege succeeds or fails, as set forth below.

**1. Applicability of the Attorney-Client Privilege**

Of the 1,019 entries on WIP's third and latest privilege log, the Court determines that the following documents *are* protected from disclosure under the attorney-client privilege: ## 6, 21, 24, 26-27, 29-31, 33, 36, 41, 44-46, 50, 57, 65-66, 69-70, 75, 78, 80-81, 83-88, 90, 94-95, 101-102, 114-115, 123, 126, 134, 137, 152, 154-156, 160-161, 163, 165, 169-170, 172-174, 177-178, 181-185, 190-193, 196-197, 199, 201-202, 204-206, 208-210, 217, 223-225, 227, 231-233, 238, 243, 246, 254-255, 263, 266, 268, 272, 286, 290, 301, 334, 340, 345, 350-351, 380, 385, 390, 394-395, 411, 413, 425-427, 429, 432, 442, 444, 448, 460, 473, 480, 483-486, 494-496, 503, 515-517, 519-523, 526-528, 532, 535-536, 541-542, 557, 565, 570-572, 593, 597, 599, 603-604, 607, 610, 638-639, 645, 671, 683-684, 690, 695, 708-709, 717-718, 723, 745, 760, 902, 913, and 935. These communications all

directly involve one or both attorneys representing Eazy-PZ at the time and expressly assert that they involved seeking advice of counsel. *Id.*

### 2. Inapplicability of the Patent-Agent Privilege

The Court determines that the following documents are *not* protected from disclosure under any asserted privilege and therefore **orders** that they be produced: ## 1-3, 5, 8-10, 15-16, 23, 32, 34, 37-39, 56, 59-64, 68, 71-73, 76-77, 92, 96-99, 105, 110, 116-122, 124-125, 132-133, 144-146, 148-150, 157, 171, 179, 187, 189, 218, 221, 234-235, 247-248, 250, 256-262, 280-281, 283-285, 288, 292, 295-299, 307-313, 315-317, 323, 326-328, 332-333, 335, 353-354, 356, 358-360, 363-366, 369, 374-379, 382, 389, 393, 397, 399-407, 410, 412, 414-417, 419, 423, 428, 430-431, 433-436, 443, 446, 454-459, 461-466, 468, 470-471, 489-493, 499, 502, 504, 507-508, 518, 533-534, 539-540, 544-546, 548-554, 558-561, 563-564, 568, 575-581, 583, 600, 602, 605-606, 608, 611-615, 618-620, 623-624, 632-634, 640, 642-644, 647, 652, 654, 661-664, 674, 680-682, 686, 691-693, 697-700, 702, 704-706, 710-712, 714-715, 719-721, 729, 731-734, 736-739, 775, 796, 803, 861, 883-884, 1015, and 1017. None of these communications involve any persons whom the Court can identify as counsel. Although many entries include patent agent Ben Williams, the Court has already established that all assertions of patent-agent privilege must necessarily fail due to WIP's failure to carry its burden to show that the privilege applies. *See supra* § II.C.

### 3. Inapplicability of Privilege for Failure to Provide Necessary Information

The Court determines that the following documents are *not* protected from disclosure under any asserted privilege and therefore **orders** that they be produced: ##

741-744, 746-752, 754-759, 761-773, 776-778, 780-795, 798-802, 804-882, 885-888, 890-891, 893-901, 903-912, 915-934, 936-1014, 1016, and 1018-1019. These documents provide no information regarding the persons involved in the communication; the "To," "From," and "CC" spaces have all been left blank. The Court is therefore completely unable to determine whether these documents would be protected under any asserted privilege, and the assertion therefore fails.

### 4. Inapplicability of Privilege for Failure to Describe Role of Communicating Persons

There are many entries on WIP's privilege log which might plausibly be subject to privilege, but the document does not provide the Court with enough information to determine on its face whether any asserted privilege actually applies. For example, the privilege log shows that, on some communications, counsel for Eazy-PZ is merely carbon-copied, rather than a direct recipient of the correspondence. Based on the information provided for those entries, the Court is unable to determine whether those communications were made for the express purpose of securing legal advice. Other entries include persons who are not identified in the log or anywhere else in the record, and the Court is unable to determine whether those persons are the holders of any of the asserted privileges.

#### a. Documents Carbon-Copying Counsel

The Court determines that the following documents are *not* protected from disclosure under any asserted privilege and therefore **orders** that they be produced: ## 19-20, 28, 35, 40, 42-43, 79, 82, 89, 112-113, 153, 162, 164, 168, 175-176, 186, 188, 194, 200, 203, 207, 219-220, 229, 240-242, 244-245, 267, 269-271, 320, 322, 324, 330-331, 336-339, 341-344, 346-349, 352, 355, 357, 361, 381, 383-384, 387-388, 391-392, 408,

418, 420-422, 437-441, 445, 447, 449, 451, 453, 482, 497-498, 500-501, 514, 524-525, 529-531, 537-538, 555-556, 562, 566-567, 569, 641, 694, 707, 774, and 914.  Each of these communications was carbon-copied to counsel for Eazy-PZ; however, "[j]ust because an email is copied to in-house counsel does not render the document subject to privilege." *Pandeosingh*, 2014 WL 5488415, at *2.  Further, the privilege log does not establish that the communications were made for the "*express* purpose of securing legal" advice. *Pownell*, 2011 WL 1045418, at *3-4.  In *Pownell*, the party claiming privilege had added counsel as a carbon copy recipient of an email because the client purportedly "wanted [counsel]'s advice regarding the issues raised in the email."  *Id.* at *3.  The Court determined that the party failed to carry its burden of establishing that the email exchange was protected by the attorney-client privilege because there was no indication that the communications were made for the express purpose of soliciting legal advice.  *Id.* at *4. The Court here likewise finds that WIP's privilege log fails to show on its face that the communications on which counsel was merely carbon-copied were made for the express purpose of securing legal advice.

### b. Documents Disclosed to Unknown Third Parties

The Court determines that the following documents are *not* protected from disclosure under any asserted privilege and therefore **orders** that they be produced: ## 4, 7, 11-14, 17-18, 22, 25, 47-49, 51-55, 58, 67, 74, 91, 93, 100, 103-104, 106-109, 111, 127-131, 135-136, 138-143, 147, 151, 158-159, 166-167, 180, 195, 198, 211-216, 222, 226, 228, 230, 236-237, 239, 249, 251-253, 264-265, 273-279, 282, 287, 289, 291, 293-294, 300, 302-306, 314, 318-319, 321, 325, 329, 362, 367-368, 370-373, 386, 396, 398, 409,

424, 450, 452, 467, 469, 472, 474-479, 481, 487-488, 505-506, 509-513, 543, 547, 573-574, 582, 584-592, 594-596, 598, 601, 609, 616-617, 621-622, 625-631, 635-637, 646, 648-651, 653, 655-660, 665-670, 672-673, 675-679, 685, 687-689, 696, 701, 703, 713, 716, 722, 724-728, 730, 735, 740, 753, 779, 797, 889, and 892.  As stated above, the Court here construes all communications disclosed to persons unidentified on the privilege log or anywhere else in the record as voluntary disclosure to a third party, thus waiving any privilege that might have applied.

### III. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#1] is **GRANTED in part** and **DENIED in part**, as outlined above.  The Motion is **denied** as to all documents not ordered to be produced in this Order.

IT IS FURTHER **ORDERED** that all documents ordered to be produced in this Order shall be produced **no later than July 11, 2019**.

Dated:  June 12, 2019

BY THE COURT:

*Kristen L. Mix*

Kristen L. Mix
United States Magistrate Judge